*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WHEELER/MARREL/FARMER, Minors.

UNPUBLISHED
November 17, 2022

No. 360929
Oakland Circuit Court
Family Division
LC No. 2019-870341-NA

Before: MURRAY, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, KW, SM, KM, and DF, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BACKGROUND

Respondent came to the attention of Child Protective Services ("CPS") when her failure to follow medical advice resulted in a life-threatening condition for one of her children. Services were provided by Families First Services, but respondent failed to make any progress and became homeless. In October 2019, petitioner filed a petition to remove the children from respondent's care. Petitioner alleged that respondent had an extensive history with CPS, dating back to 2011, which included allegations of domestic violence, homelessness, substance abuse, and physical neglect and abuse. Respondent entered a plea of no contest to the petition, the court exercised jurisdiction over the children, and respondent was offered a treatment plan to address the barriers to reunification. In June 2021, respondent had yet to establish suitable housing and had not benefited from other services, so petitioner filed a supplemental petition requesting termination of respondent's parental rights. Following separate hearings, the trial court found that statutory grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination of respondent's parental rights was in the children's best interests.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding that the cited statutory grounds for termination were established by clear and convincing evidence.

-1-

To terminate parental rights, the trial court must find that at least one statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), (j), which permits termination of parental rights under the following circumstances.

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> &#42;  &#42;  &#42;

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> &#42;  &#42;  &#42;

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination is appropriate under § 19b(3)(c)(*i*) when the conditions that brought the child into care continue to exist despite that respondent was given "time to make changes and the opportunity to take advantage of a variety of services. . . ." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Termination of parental rights is proper under § 19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] ha[s] not accomplished any meaningful change in the conditions" that led to the adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). At the time of termination, more than 182 days had elapsed since issuance of the initial dispositional order and there was evidence that the conditions that led to the adjudication continued to exist.

Although the children were brought into care at different times, they were all brought into care because respondent was unable to provide proper care due to a lack of stable housing and income. Initially, KW, SM, and KM were placed in their grandmother's home as a safety plan because respondent no longer had the funds to pay for their hotel room. However, once they were placed with their grandmother, KW began opening up about physical abuse that respondent had inflicted on SM and KM. KW also reported that she had witnessed respondent engaging in sexual

intercourse with her live-in partner and domestic violence between the two. KW also reported that the family often lacked food to eat and resorted to panhandling for money. DF was also removed from respondent's care because she had run out of funds to keep living in a hotel room. At the time of the termination hearing, respondent still did not have safe and stable housing.

Respondent argues that petitioner did not establish by clear and convincing evidence "that there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age" because petitioner failed to make reasonable efforts to reunify her with the children. Respondent did not raise any challenge to the adequacy of petitioner's reunification efforts until closing argument at the termination hearing, which was too late to preserve the issue for appeal. *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). Therefore, respondent's challenge to the adequacy of petitioner's reunification efforts is unpreserved.

This Court generally reviews for clear error a trial court's factual finding that petitioner made reasonable efforts to reunify a respondent with the child. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op at 3. "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id.* However, this Court reviews unpreserved issues for plain error affecting substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). Respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [her] substantial rights." *Id.* Further, the error must have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings[] . . . ." *Id.*, quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). "While [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

Respondent argues that petitioner failed to make reasonable efforts toward reunification because of a delay in KW's court-ordered trauma assessment and the failure to initiate family therapy. At the initial disposition in May 2019, the trial court suspended respondent's visitation with KW until she could undergo a trauma assessment. KW did not complete the trauma assessment until March 2020, which resulted in recommendations for trauma focused cognitive behavioral therapy before family therapy with respondent could begin. In its decision addressing the statutory grounds for termination, the trial court noted that it was not respondent's fault that family therapy had not taken place, but that it was respondent's fault that her past neglect had resulted in a broken bond between her and KW.

Just as respondent was never able to address her underlying mental health issues in therapy because of immediate environmental stressors, such as lack of income and housing, KW never progressed to family therapy because of the stressors she experienced. KW was forced to address many difficulties throughout the case, such as grief over the death of her older sister, the difficult situation she experienced in her paternal grandmother's home, including her grandmother's

-3-

ultimate decision to have KW removed from the home. In addition, KW's maternal grandmother, who initially had expressed to KW her interest in guardianship, changed her mind. After leaving her paternal grandmother's home, KW had to leave another foster home after that family decided they did not want to participate in fostering any longer. KW experienced a bout of depression and anxiety, not bathing or changing her clothing regularly, and isolating herself in her bedroom. Reasonable efforts were made to assist respondent and KW in stabilizing their mental health throughout the case. However, KW was not able to overcome the difficulties of her past trauma and her experience in foster care to a degree where she could begin family therapy with respondent. Respondent fails to explain what additional services or assistance should have been offered to rebuild the bond between KW and respondent in light of the ongoing trauma that KW faced, which indefinitely delayed family therapy.

Respondent also argues that petitioner failed to make reasonable efforts to bring the children and respondent closer together for services and parenting time. However, Samantha Andrus, the foster care worker, testified that respondent participated in all the services required under her parent-agency treatment plan and she regularly attended parenting time. There was no evidence that respondent did not substantially participate in services because of transportation issues and the trial court did not make any finding to that effect.

Finally, respondent argues that petitioner failed to meaningfully assist her in obtaining housing beyond offering housing resources. Andrus and the previous worker had made referrals for respondent for housing. Her therapist also made referrals for housing and helped respondent apply for Section 8 and low-income housing. Respondent's therapist, Dr. Hernandez, continuously encouraged respondent to submit all the documents she needed for Section 8 housing, and she was willing to provide additional resources if needed. Andrus testified that she walked through every parent-agency treatment plan with respondent and consistently questioned respondent regarding her progress and the steps respondent needed to take toward services. Andrus believed that respondent understood their conversations because respondent was able to read the plans and converse regarding the steps she was taking toward reunification and ask appropriate follow-up questions.

Andrus testified that she thought that respondent displayed a lack of urgency toward establishing housing. Andrus reported that respondent was very slow in submitting her documents and she consistently reported to Andrus that "she was going to make progress and she was going to pick up documents or submit documents," but she did not always do what was required. Rather than a lack of reasonable efforts by petitioner, there was testimony that respondent was comfortable with her children's placements and became complacent in her efforts to obtain housing.

There was clear and convincing evidence that petitioner made reasonable efforts toward reunification. There was also clear and convincing evidence that there was no reasonable likelihood that the conditions that led to the adjudication would be rectified within a reasonable time considering the children's age. Respondent's children had been in care for three years, respondent had moved six different times during the case, and still did not have safe and suitable housing. The trial court did not clearly err by finding that clear and convincing evidence supported termination under § 19b(3)(c)(*i*).

-4-

Section 19b(3)(g) requires the trial court to consider the respondent's financial ability to provide proper care and custody. The trial court's findings regarding respondent's finances were contradictory in regard to § 19b(3)(g). The court first indicated that it "heard no testimony that they do not have the means to take care of these children." However, the trial court also stated that although respondent had an income, "I think the testimony is clear that she does not have sufficient income to buy housing, which again, the two of those are linked." The trial court also indicated that respondent was struggling with "lack of income, which then leads to a lack of housing." Considering the trial court's findings, and the testimony that respondent had only been working part-time for a temporary staffing agency since November 2020, and that her lack of income was a stressor, the trial court clearly erred by finding that § 19b(3)(g) was established by clear and convincing evidence. However, this error is harmless because it is only necessary to establish one statutory ground for termination. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court did not clearly err by finding that clear and convincing evidence supported termination under §§ 19b(3)(c)(*i*) and (j).

With respect to § 19b(3)(j), the trial court did not clearly err by finding that there was a reasonable likelihood, based on respondent's conduct or capacity, that the children would be harmed if they were returned to respondent's care. There was clear and convincing evidence that respondent did not have an appropriate home for the children to live if they were returned to her care. She had moved many times during the case and sometimes lived in unsafe and unsanitary conditions. In addition, respondent had been living with a man whom Andrus had informed her was inappropriate to have around the children because of his criminal history. Although respondent agreed that her children could not live with him and she was not planning with him, she continued to live with him. There was also evidence that the children, particularly KW, were traumatized because of their prior experiences living with respondent, and the children were adamant about not wanting to be returned to her care. Considering this evidence, the trial court did not clearly err by finding that clear and convincing evidence supported termination under § 19b(3)(j).

## III. BEST INTERESTS

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination is in the best interests of the child must be proved by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. This Court reviews for clear error the trial court's determination regarding a child's best interests. *In re White*, 303 Mich App at 713.

The trial court must terminate a parent's rights to a child if the petitioner establishes a statutory ground for termination by clear and convincing evidence and a preponderance of the evidence on the whole record demonstrates that termination of parental rights is in a child's best interests. MCL 712A.19b(5). As explained in *In re White*, 303 Mich App at 713-714:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the

parent's home.' The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [Citation omitted.]

A preponderance of the evidence showed that termination of respondent's parental rights was in the children's best interests. There was no evidence of a strong bond between respondent and any of her children, or that she had the ability to properly care for them. During the case, respondent never reached out to inquire about the children's schooling or services. Indeed, she did not know where the children went to school. Respondent never asked about KW and her well-being even though she had not seen or talked to KW since the case began. Although respondent testified that she had secured a one-bedroom apartment, she did not have any furniture, did not check the nearby schools for the children's enrollment, and she did not know where she would find childcare while she was working.

The evidence was clear that KW did not have any bond with respondent. From the outset of the case, KW expressed an unwillingness to pursue a relationship with respondent because of the past trauma and neglect that she had experienced. KW had lived in several different homes throughout the case and was finally placed with her paternal grandparents. She expressed that she was now living in a home in which she was comfortable and thriving, and she wished for her grandparents to adopt her. During respondent's testimony, it became clear that respondent did not plan for KW to be returned to her care. She testified at the statutory-grounds hearing that she had written a letter in support of her application for Section 8 housing explaining that KW would not be living with her. At the best-interest hearing, respondent was trying to secure a one-bedroom apartment, indicating that KW would not live there.

Although SM and KM continued to visit with respondent and enjoyed their visits with her, they continually made it known that they did not want to live with her. SM and KM were doing very well in their foster home. They referred to their foster parents as "mom" and "dad," and they wanted to live with them long-term. SM and KM expressed fear that they would be removed from their foster home and returned to respondent's care.

Christy Elling Shillings, a foster care supervisor, testified that the relationship between respondent and DF was more of a babysitter relationship, rather than a mother-child relationship. During visits, DF referred to respondent as "[SM's] mom." DF called the aunt he lived with "mom." After visits with respondent, DF exhibited negative behaviors, including biting and incontinence, that he did not exhibit at other times.

Although KW and DF were in relative placements, it was important for them to have stability, safety, and reassurance that they would not have to move again. Mariah Harden, a foster care worker, thought it would be a traumatic setback for the children if respondent's parental rights were not terminated. Considering the children's lack of bond with respondent, respondent's lack of parenting skills, the children's need for permanency, stability, and finality, and the advantages of their foster homes over placement in respondent's care, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron